**MICHAEL C. BAXTER**
Oregon State Bar ID Number 910203
michael@baxterlaw.com
**JUSTIN M. BAXTER**
Oregon State Bar ID Number 992178
justin@baxterlaw.com
**KACHELLE A. BAXTER**
Oregon State Bar ID Number 120659
kachelle@baxterlaw.com
Baxter & Baxter LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172
Attorneys for Plaintiff Miller

Judge Anna J. Brown

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JULIE MILLER**,

    Plaintiff,

  v.

**EQUIFAX INFORMATION SERVICES LLC,** a foreign limited liability company,

    Defendant.

Case No. 3:11-cv-01231-BR

**PLAINTIFF'S TRIAL MEMORANDUM**

Page  1 – **PLAINTIFF'S TRIAL MEMORANDUM**

INTRODUCTION

Plaintiff Julie Miller brings this action against defendant Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* In 2009, Equifax merged plaintiff's credit file with that of another consumer who has a different Social Security number, a different date of birth, and a different address. Ms. Miller tried again and again to get Equifax to delete dozens of collections that did not belong to her from her credit report. Equifax told plaintiff that it had "contacted each source directly" and "addressed your concerns" when it had done no such thing.

SUMMARY OF FACTS

In September 2009, Equifax merged Ms. Miller (who has excellent credit) with another consumer with a different Social Security number (SSN), date of birth (DOB), and address from Ms. Miller.

In December 2009, Ms. Miller was denied for a credit line from Keybank. She received an adverse action notification from Keybank, dated December 18, 2009, that said she had been denied due to delinquencies and a derogatory credit rating by Equifax.

Ms. Miller attempted to obtain a copy of her Equifax credit report. Equifax did not send Ms. Miller a copy of her credit report. Instead, Equifax sent her a form letter dated January 5, 2010, that requested additional proof of her identity. Ms. Miller responded by sending two pieces of documentation listed in Equifax's letter: a paystub and a telephone bill.

Equifax sent Ms. Miller a credit report dated January 18, 2010. The credit report contained dozens of collection accounts, which did not belong to Ms. Miller. The credit report also listed a SSN, DOB and addresses that were different from Ms. Miller's.

Ms. Miller mailed a letter dated January 25, 2010 to Equifax, disputing the inaccurate information to Equifax. She sent a copy of the January 18, 2010 credit report with the false collection accounts and information highlighted, and the incorrect SSN and DOB circled.

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Instead, Equifax sent a form letter, dated February 5, 2010, that stated: "We received your request concerning your Equifax credit file and have addressed your concerns." But that was false. Equifax had addressed none of Ms. Miller's concerns.

Equifax also demanded that Ms. Miller again send additional proof of her identity. This made no sense, because she had enclosed a copy of the January 18, 2010 credit report with her dispute package, demonstrating that she had already verified her identity within just the last month. The FCRA does not require a consumer to provide proof of their identity to initiate a reinvestigation under 15 U.S.C. § 1681i. Notwithstanding, under Equifax's policies, Ms. Miller adequately verified her identity.

Finally, Equifax falsely implied in the February 5, 2010 letter that it had conducted a reinvestigation of Ms. Miller's dispute: "In order to receive the results of investigation, a copy of one item in EACH of the categories below is needed in order to verify your identification and address." Equifax had not conducted any reinvestigation of Ms. Miller's dispute, so there were no "results" to receive.

Ms. Miller responded in a letter dated February 11, 2010, again disputing the false and derogatory accounts, and providing the requested identification. Even though she had previously provided her paystub and phone bill, she provided a new copy of her paystub and drivers license.

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Instead, Equifax sent Ms. Miller a letter dated February 23, 2010, that purported to be the "Results of your Investigation." The letter stated: "Below are the results of your request for Equifax to reinvestigate certain elements of your Equifax credit file. Equifax contacted each source directly and our investigation is now complete." That was a lie. Equifax did not contact any source of any disputed information.

The February 23, 2010 letter also instructed Ms. Miller to "be specific with your concerns by listing the account names, numbers, and nature of the dispute. Please be specific with your concerns by listing the personla [sic] information and the nature of the dispute." But Ms. Miller had already sent Equifax her *Equifax* credit report, with the specific accounts and information she was disputing highlighted.

Finally, the February 23, 2010 letter advised Ms. Miller that "if you have additional questions or concerns about the information provided to Equifax by the source of any information, please contact the source of that information directly." But the FCRA does not require a consumer to dispute false information to the furnisher directly. The FCRA requires Equifax to conduct a reinvestigation, including considering all relevant information provided by the consumer, notifying the furnisher of the consumer's dispute, and deleting any information that cannot be verified as complete and accurate. Equifax also sent Ms. Miller a new credit report dated February 23, 2010. It included page after page of collection accounts and information that did not belong to Ms. Miller.

In March of 2010, Ms. Miller was again denied by Keybank for a cash credit reserve line. Keybank sent Ms. Miller an adverse action letter dated March 4, 2010, that stated she had been denied due to "collection action" being included in her Equifax credit report.

In 2011, Ms. Miller requested a new copy of her credit report. Equifax did not send her a credit report. Instead, it sent a form letter dated March 30, 2011, and incorrectly addressed to "JULLE MILLER," demanding additional proof of her identity. A few weeks later, Equifax sent Ms. Miller another form letter dated April 13, 2011, also demanding additional proof of her identity. Ms. Miller responded by sending a copy of her W-2 form and an insurance bill. Equifax did not provide Ms. Miller with her credit report.

On June 28, 2011, Ms. Miller called Equifax directly. She told Equifax that she was mixed with another person with collections and derogatory information. She told Equifax that she did not have any past due accounts. Equifax told Ms. Miller that she was apparently mixed with another person. She was told that she needed to contact the credit grantors directly to update her SSN.

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Instead, Equifax sent Ms. Miller a copy of her credit report dated June 28, 2011. The credit report continued to include dozens of collection accounts and false identifying information that did not belong to Ms. Miller.

Ms. Miller sent a letter dated July 18, 2011, again disputing the false collections and personal identifying information. She specifically disputed the other consumer's SSN, DOB, previous addresses, and employment. She used Equifax's "Research Request Form" and copied

numerous accounts she was disputing by hand. She enclosed a copy of the June 28, 2011 credit report with all of the false accounts and information highlighted.

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Instead, Equifax sent Ms. Miller yet another form letter dated July 28, 2011, which read: "We received your request regarding your Equifax credit file and have addressed your concerns." This was false. Equifax had not addressed any of Ms. Miller's concerns. Equifax again falsely suggested that it had conducted a reinvestigation of Ms. Miller's dispute, and demanded proof of Ms. Miller's identity to receive the results of the purported reinvestigation. Equifax had not conducted any reinvestigation of Ms. Miller's dispute.

Ms. Miller responded to Equifax in a letter dated August 1, 2011. She enclosed a copy of her W-2 form and an insurance bill. She wrote "I returned the last credit report with the disputed information. I am requesting a corrected credit report."

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Instead, Equifax sent Ms. Miller a credit report dated August 8, 2011. The credit report continued to include dozens of collection accounts and personal identifying information that did not belong to Ms. Miller.

Ms. Miller wrote to Equifax again in a letter dated August 25, 2011. Ms. Miller used Equifax's Research Request Form to hand write the disputed collection accounts and identifying information. Anticipating Equifax's response, Ms. Miller preemptively enclosed a copy of her

Page 6 – **PLAINTIFF'S TRIAL MEMORANDUM**

W-2 form and insurance bill.

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Instead, Equifax sent Ms. Miller another form letter dated September 1, 2011. This letter again falsely stated "We received your request regarding your Equifax credit file and have addressed your concerns." But, Equifax had not addressed any of Ms. Miller's concerns. Equifax again falsely implied that it had conducted a reinvestigation of Ms. Miller's dispute, when it had not conducted any reinvestigation of Ms. Miller's dispute.

On September 13, 2011, Ms. Miller responded to Equifax, enclosing the September 1, 2011 form letter with a copy of her W-2 form and an insurance bill.

Equifax did not conduct a reinvestigation of Ms. Miller's dispute. Equifax did not notify any of the furnishers of Ms. Miller's dispute. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

On September 21, 2011, Equifax responded with the same form letter it had sent Ms. Miller on February 5, 2010, and July 28, 2011, and September 1, 2011. Equifax again misrepresented that it had addressed Ms. Miller's concerns, and that it would send her the results of its reinvestigation if she would only provide proof of her identity.

Equifax's violations of the FCRA caused Ms. Miller substantial damages. Equifax besmirched Ms. Miller's good name, and told her valid creditors (including Keybank) that she had dozens of accounts in collections. She was repeatedly denied credit, and lost out on the opportunity to seek credit, such as purchasing a car for her disabled brother, or building a workshop with her husband.

Page  7 – **PLAINTIFF'S TRIAL MEMORANDUM**

Equifax's violations caused Ms. Miller years of emotional distress, frustration, embarrassment and mental anguish. Ms. Miller spent inordinate time attempting to respond to Equifax's demands for proof of identity that she had already sent time and again. Throughout her disputes, Ms. Miller repeatedly expressed her distress that her personal identifying information was being disclosed to persons and entities that she had not authorized.

## THE FAIR CREDIT REPORTING ACT

I. PURPOSE OF THE FAIR CREDIT REPORTING ACT.

The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., was the product of Congressional concern over abuses in the credit reporting industry. *Guimond v. Trans Union Credit Information Co.*, 45 F3d 1329, 1333 (9th Cir. 1995). Congress specifically found "a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The legislative history of the FCRA indicates that it was crafted to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. "These consumer oriented objectives support a liberal construction of the FCRA." *Guimond*, 45 F3d at 1333, *citing Kates v. Croker National Bank*, 776 F2d 1396, 1397 (9th Cir. 1985).

To achieve these objectives, Congress imposed strict requirements on credit reporting agencies. These requirements are contained in the various sections of the FCRA. The sections applicable to this case concern accuracy, handling consumer disputes, limitations on providing credit reports to third parties, protections for victims of identity theft, and a consumer's right to obtain all the information in their credit file.

II. CIVIL LIABILITY UNDER THE FCRA.

Any person who negligently fails to comply with any requirement under the FCRA is liable for actual damages, costs, and attorneys' fees. 15 U.S.C. § 1681o(a). In addition, punitive damages may be awarded if any person willfully fails to comply. 15 U.S.C. § 1681n. Plaintiff asserts claims under both § 1681o and § 1681n.

The general negligence standard applies to claims pursuant to § 1681o. The standard is what a reasonably prudent person would do under the circumstances. *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F2d 509, 513 (5th Cir. 1982). The term "actual damages" in § 1681o includes emotional distress and humiliation. *Guimond*, 45 F3d at 1333. Neither a denial of credit nor transmission of a credit report to a third party is required for liability. *Id.*

A consumer may recover punitive damages if the defendant acted willfully. "Willful" means that defendant acted knowingly or in *reckless disregard* of a consumer's rights under the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). "Reckless disregard" means an action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. at 69, 127 S. Ct. at 2215, quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A consumer need not prove malice or evil motive. *Reynolds v. Hartford Financial Services*, 435 F.3d 1081, 1098 (9th Cir 2006), *rev'd on other grounds*, *Safeco, supra*; *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 418 (4th Cir. 2001); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226-27 (3rd Cir. 1997).

III. PLAINTIFF'S CLAIMS FOR RELIEF.

    A. <u>Failure to Assure Maximum Possible Accuracy</u>.

A primary goal of the FCRA is to assure accuracy of the information in credit reports that are used throughout our economy in making decisions whether to provide loans, services, employment, housing and insurance. To achieve this goal, the FCRA requires that whenever a credit reporting agency prepares a credit report "it shall follow reasonable procedures to assure maximum possible accuracy of the information *concerning the individual* about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). Notably, it is not enough that Equifax's credit reports in general are accurate. Rather, the statute requires that Equifax assure the maximum possible accuracy of Ms. Miller's credit report.

A consumer makes a prima facie case for violation of Section 1681e(b) by presenting evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. *Guimond*, 45 F3d at 1333. Plaintiff claims that Equifax repeatedly violated Section 1681e(b) by preparing credit reports that were inaccurate.

    B. <u>Failure to Properly Handle Plaintiff's Disputes</u>.

The FCRA gives consumers the right to dispute information on their reports. Upon receiving notice of a dispute, a credit reporting agency must conduct a reasonable reinvestigation of the dispute and follow the other procedures specified in 15 U.S.C. § 1681i. It is vitally important that the agency follow these procedures because a consumer dispute is one of the best ways of correcting inaccurate information, and it is the only way a consumer can change information that is on a report.

Equifax violated several of the reinvestigation requirements, as follows:

1) failing to reinvestigate plaintiff's disputes within 30 days, in violation of 15 U.S.C. §1681i(a)(1)(A);

2) failing to conduct a reasonable reinvestigation of disputed information, in violation of 15 U.S.C. §1681i(a)(1)(A);

3) failing to review and consider all relevant information submitted by plaintiff regarding her disputes, in violation of 15 U.S.C. §1681i(a)(4);

4) failing to notify the furnisher about plaintiff's dispute, and provide the furnisher with all relevant information received from plaintiff, within five days of receiving the dispute, in violation of 15 U.S.C. §1681i(a)(2)(A);

5) failing to promptly provide to the person who furnished the disputed information all relevant information received from plaintiff between the 5th day and the 30th day after receiving notice of the dispute, in violation of 15 U.S.C. § 1681i(a)(2)(B);

6) failing to promptly delete information found to be inaccurate or incomplete or that was not verified, in violation of 15 U.S.C. § 1681i(a)(5)(A);

7) failing to send plaintiff written notice of the results of the reinvestigation and a credit report that is based on plaintiff's file as that file is revised as a result of the reinvestigation, in violation of 15 U.S.C. § 1681i(a)(6).

In this case, Ms. Miller disputed the false and derogatory information seven times over the course of two years. Equifax did not conduct a reinvestigation of Ms. Miller's disputes. Equifax did not notify any of the furnishers of credit information that Ms. Miller had disputed information in her credit report. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

C. <u>Wrongful Disclosure of Plaintiff's Information.</u>

Another purpose of the FCRA is to protect consumer privacy and maintain the confidentiality of a consumer's personal and financial information. To achieve this, the FCRA strictly limits the circumstances in which a credit reporting agency can provide a consumer's information to a third party. See 15 U.S.C. § 1681b. The provision pertinent to this case is Section 1681b(a)(3), which states that a credit reporting agency may only furnish a credit report "(3) To a person which it has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on who the information is to be furnished and involving the extension of credit to, or review or collection of an account, of the consumer."

Equifax violated Section 1681b by providing plaintiff's credit report to companies for transactions that involved the other consumer, rather than plaintiff. In *Andrews v. TRW, Inc.*, 225 F3d 1063 (9th Cir. 2000), the Ninth Circuit examined whether a credit reporting agency had a permissible purpose in providing a credit report on a consumer who was the victim of identity theft. The court held that the language in § 1681b limiting the furnishing of a credit report to a "credit transaction involving the consumer" should be interpreted so that it does not include a transaction initiated by the identity thief. 225 F3d at 1067.

The Ninth Circuit reaffirmed its strict construction of this statutory language in *Pintos v. Pacific Creditors Association*, 565 F3d 1106 (9th Cir. 2009). In that case, the court held that a collection agency did not have a permissible purpose for pulling a consumer's credit report to collect a bill resulting from the towing of the consumer's car. The court reasoned that because the consumer had not asked to have her car towed, there was no "credit transaction involving the consumer" under Section 1681b(a)(3)(A) and that section did not authorize the collector to obtain the report.

In this case, Equifax sent Ms. Miller's credit file to Discover, Fingerhut, Clearwire, Dish or Swiss Colony, without a permissible purpose under the FCRA.

D. <u>Failure to Provide Plaintiff with All Information in Her File.</u>

A consumer has a right to obtain "all the information in the consumer's file" with a consumer reporting agency, upon request. 15 U.S.C. § 1681g(a)(1). In addition, the agency must also provide identification of each person that received a report on the consumer during the preceding year, and a record of all inquires concerning the consumer during the preceding year. 15 U.S.C. § 1681g(a)(3)(A)(ii) and (5). The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

Plaintiff repeatedly requested copies of her credit file, only to be told she needed to provide additional proof of her identity, or to receive no response at all. In one instance, she had to call and plead with Equifax to provide her a copy of her credit report. This was signifcant because Equifax continually tried to avoid its duties under the FCRA by referring plaintiff to the creditors. But Ms. Miller could not contact the creditors if she could not get a copy of her credit report.

CONCLUSION

Ms. Miller made seven disputes in two years and Equifax performed zero investigations. Equifax did not conduct a single reinvestigation. Equifax did not notify any of the furnishers a single time. Equifax did not delete any of the disputed accounts or correct the inaccurate identifying information.

Rather than complying with its duties under the FCRA, Equifax continually tried to avoid its obligations, by instructing Ms. Miller to contact the creditors directly herself, and by telling

Page  13 – **PLAINTIFF'S TRIAL MEMORANDUM**

Ms. Miller to send more proof of her identity.

And, rather than owning up to its serial violations of the FCRA, Equifax goaded her that it has "addressed your concerns" and that she needed to provide additional proof of her identity to receive the results of her investigation. Equifax went so far as to tell Ms. Miller it had contacted each of the creditors directly, when it had done no such thing.

DATED this 28th day of June, 2013.


/s/ Justin M. Baxter
_____
Justin M. Baxter, OSB No. 992178
Attorney for Plaintiff