IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIE MILLER,                                    3:11-CV-01231-BR

          Plaintiff,

                                                 OPINION AND ORDER

v.

EQUIFAX INFORMATION SERVICES,
LLC,

          Defendant.


**MICHAEL C. BAXTER**
**JUSTIN M. BAXTER**
**KACHELLE A. BAXTER**
Baxter & Baxter, LLP
8835 S.W. Canyon Lane
Suite 130
Portland, OR 97242
(503) 297-9031


**MAUREEN LEONARD**
P.O. Box 42210
Portland, OR 97242
(503) 224-0212

          Attorneys for Plaintiff

**IAN E. SMITH**
**LEWIS P. PERLING**
**PHYLLIS B. SUMNER**
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
(404) 572-4600


1  - OPINION AND ORDER

**JEFFERY M. EDELSON**
Markowitz Herbold Glade & Mehlhaf, PC
1211 S.W. Fifth Avenue
Suite 3000
Portland, OR 97204
(503) 295-3085

      Attorneys for Defendant

**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Julie Miller's Motion for Attorneys' Fees (#111), Motion (#121) for Additional Attorneys' Fees, and Bill of Costs (#114).

    For the reasons that follow, the Court **GRANTS** Miller's Motion for Attorneys' Fees, **GRANTS in part** Miller's Motion for Additional Attorneys' Fees, and awards attorneys' fees to Miller in the amount of **$302,002.50**.  The Court also awards costs to Miller in the amount of **$380.00**.

## BACKGROUND

    Miller filed this action in October 12, 2011, against Defendant Equifax Information Services, LLC, for negligent violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*

    On July 23, 2013, the matter proceeded to trial.

    On July 26, 2013, the jury returned a Verdict in which it found in favor of Miller.  The jury awarded Miller actual damages in the amount of $180,000 and punitive damages in the amount of

2  - OPINION AND ORDER

$18,400,000.

On January 29, 2014, the Court granted Equifax's Motion
(#91) for Reduction of Punitive Damages and reduced the jury's
punitive-damages award to $1,620,000.

On February 28, 2014, Miller filed her Motion for Attorneys'
Fees and Bill of Costs.  On March 27, 2014, Miller filed her
Reply (#121) in Support of the Motion for Attorneys' Fees in
which she requested additional attorneys' fees, which the Court
construes as a Motion for Additional Attorneys' Fees.  The Court
took Miller's Motions (#111, #121) and Bill of Costs (#114) under
advisement on March 27, 2014.

## MILLER'S MOTION (#111) FOR ATTORNEYS' FEES

### I.   Attorneys' Fees Under FCRA

FCRA provides:  "[I]n the case of any successful action to
enforce any liability under this section" the consumer is
entitled to "the costs of the action together with reasonable
attorney's fees as determined by the court."  15 U.S.C.
§§ 1681n(a)(3), 1681o(a)(2).

As noted, Miller's action against Equifax was successful,
and, therefore, she is entitled to attorneys' fees and costs
under FCRA.

### II.  Standards

Under federal fee-shifting statutes such as FCRA "the

3  - OPINION AND ORDER

lodestar approach" is "the guiding light" in determining a reasonable fee. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1671-73 (2010)(internal quotation omitted). Under the lodestar method the court first determines the appropriate hourly rate for the work performed and then multiplies that amount by the number of hours properly expended in doing the work. *Id.* Although "in extraordinary circumstances" the amount produced by the lodestar calculation may be increased, "there is a strong presumption that the lodestar is sufficient." *Id.* at 1669. The party seeking an award of fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Retirement Income Plan For Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)(quotations omitted). When "determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

To determine the lodestar amount, the court may consider the following factors:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions involved;
> (3) the skill requisite to perform the legal service

properly;
(4)   the preclusion of other employment by the attorney
      due to acceptance of the case;
(5)   the customary fee;
(6)   whether the fee is fixed or contingent;
(7)   any time limitations imposed by the client or the
      circumstances;
(8)   the amount involved and the results obtained;
(9)   the experience, reputation, and ability of the
      attorneys;
(10)  the undesirability of the case;
(11)  the nature and length of the professional
      relationship with the client; and
(12)  awards in similar cases.

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997,
1007 n.7 (9th Cir. 2002)(quotation omitted).  A rote recitation
of the relevant factors is unnecessary as long as the court
adequately explains the basis for the award of attorneys' fees.
*McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th
Cir. 1995).

     The lodestar amount is presumed to be the reasonable fee,
and, therefore, "'a multiplier may be used to adjust the lodestar
amount upward or downward only in rare and exceptional cases,
supported by both specific evidence on the record and detailed
findings by the lower courts.'"  *Summers v. Carvist Corp.*, 323 F.
App'x 581, 582 (9th Cir. 2009)(quoting *Van Gerwen v. Guarantee
Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).  "Adjust-
ments [to the lodestar amount] must be carefully tailored . . .
and [made] only to the extent a factor has not been subsumed
within the lodestar calculation."  *Rouse v. Law Offices of Rory
Clark*, 603 F.3d 699, 704 (9th Cir. 2009)(citing *Camacho v.*

*Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)),

*abrogated on other grounds by Marx v. Gen. Revenue Corp.*, 133 S.

Ct. 1166, 1172 (2013).

### III. Hourly Rates for Miller's Counsel

Plaintiff requests fees for 747.8 hours of work on this

matter performed by four attorneys:  Michael Baxter, Justin

Baxter, Kachelle Baxter, and Maureen Leonard.  This Court uses

the most recent Oregon State Bar Economic Survey published in

2012 (OSB Survey) as its benchmark to determine the reasonable

hourly rate.  Attorneys may argue for higher rates based on

inflation, specialty, or any number of other factors.  Miller

contends the Court should consider the 2012 Morones Survey of

Commercial Litigation Fees when determining the reasonableness of

her attorneys' requested hourly rates.  This district court,

however, recently declined to consider the Morones Survey and

instead relied on the OSB Survey. *See Precision Seed Cleaners v.*

*Country Mut. Ins. Co.*, No. 10-cv-01023-HZ, 2013 WL 5524689, at

\*11 (D. Or. Oct. 1, 2013).  For those same reasons, the Court

similarly declines to consider the Morones Survey in this case

and relies on the OSB Survey to determine the reasonableness of

the hourly rates requested by Miller.

### A.    Baxter & Baxter Attorneys

Equifax contends the hourly rate for Michael Baxter, Justin

Baxter, and Kachelle Baxter of Baxter & Baxter LLP should be

based on the OSB Survey rates for the Tri-County area. Although
it appears the law office of Baxter & Baxter is located outside
of the downtown Portland area, the Court has used the OSB Survey
rates for the Portland area in at least one prior case in which
it awarded attorneys' fees for Baxter & Baxter attorneys. *See*,
*e.g.*, *Jansen v. Experian Info. Solutions, Inc.*, No. 05-CV-385-BR,
2011 WL 846876, at *4 (D. Or. Mar. 9, 2011). Accordingly, the
Court concludes as it did then that the OSB Survey data for
downtown Portland is the correct benchmark to use when assessing
the reasonableness of the hourly rates for Michael Baxter, Justin
Baxter, and Kachelle Baxter.

  **1. Michael Baxter**

  Michael Baxter has been in private practice for
approximately 23 years and requests an hourly rate of $425.
Michael Baxter is recognized nationally in the top tier of
consumer litigators, particularly in FCRA litigation. Since 1995
he has successfully litigated numerous consumer cases in the
District Court of Oregon in which many of his clients were
awarded significant verdicts. Equifax does not dispute Michael
Baxter's expertise or qualifications.

  According to the OSB 2012 Survey, Portland attorneys
with Michael Baxter's level of experience billed on average at a
rate of $326 per hour in 2012. The Court is persuaded on this
record, however, that Michael Baxter has the skills, reputation,

and experience to warrant a higher-than-average billing rate. The 2012 billing rate in Portland for business or corporate litigators in the 75th percentile was $360 per hour and $470 per hour for those in the 95th percentile.

The Court concludes under the circumstances of this case that Michael Baxter's requested rate of $425 per hour is reasonable under the Oregon 2012 Survey when compared to practitioners with similar experience and expertise.

### 2. Justin Baxter

Justin Baxter has been in private practice for approximately 15 years and requests an hourly rate of $375. Justin Baxter has been co-counsel in a number of consumer cases in which Baxter & Baxter represented plaintiffs who have received significant verdicts. Justin Baxter is a former chair of the OSB Consumer Law Section and the current co-chair of the Oregon Trial Lawyers Association (OTLA) Consumer Protection Section. He is the author of the chapters on FCRA in the 2013 and 2005 editions of Consumer Law in Oregon (OSB Cont. Ed.), has been invited to lecture on FCRA around the country, and has been retained as co-counsel in FCRA litigation in 17 states. Equifax does not dispute Justin Miller's expertise or qualifications.

According to the OSB 2012 Survey, Portland attorneys with Justin Baxter's level of experience billed on average at a rate of $312 per hour in 2012. The Court is persuaded on this

record, however, that Justin Baxter is an above-average attorney in his field.  As noted, the 2012 OSB Survey billing rates in Portland for business or corporate litigators in the 75th percentile and 95th percentile were $360 and $470 per hour respectively.  Furthermore, the billing rate for attorneys in the 75th percentile with 13-15 years experience was $379 per hour.

The Court concludes under the circumstances of this case that Justin Baxter's requested rate of $375 per hour is reasonable under the Oregon 2012 Survey when compared to practitioners with similar experience and expertise.

### 3.   Kachelle Baxter

Kachelle Baxter has been in private practice for approximately two years and requests an hourly rate of $225. Prior to beginning her private practice in 2012 Kachelle Baxter provided litigation support in a number of FCRA cases in which Baxter & Baxter achieved successful results for their clients. Although Equifax argues for a rate lower than $225 per hour, it concedes Kachelle Baxter is entitled to an increase in the average rate for attorneys of her experience level due to her prior litigation support work.

According to the OSB 2012 Survey, Portland attorneys with Kachelle Baxter's level of experience billed on average at a rate of $182 per hour in 2012.  Attorneys with 0-3 years of experience who are in the 75th percentile and 95th percentile

9  - OPINION AND ORDER

billed at a rate of $198 per hour and $246 respectively.

In light of Kachelle Baxter's ten years of prior experience working in litigation support on FCRA cases, the Court concludes Kachelle Baxter's requested rate of $225 per hour is reasonable.

### B.  Maureen Leonard

Maureen Leonard has been a member of the Oregon State Bar since 1982 and in private practice for over 20 years specializing in appellate litigation.  Leonard seeks an hourly rate of $425. Equifax does not object to Leonard's hourly rate.

Leonard has represented plaintiffs in numerous cases involving significant punitive-damages awards.  Leonard served as a judicial clerk for Justice Betty Roberts at the Oregon Supreme Court and also worked as a staff attorney at the Oregon Supreme Court.  She is a member and past chair of the OTLA Amicus Committee and was involved as an OTLA amicus-brief writer in a case before the Oregon and United States Supreme Courts.  Leonard routinely serves as a consultant regarding the developing law as to punitive damages.  She is also a member and past board member of the OSB Appellate Practice and Constitutional Law Section.

The Court is persuaded on this record that Leonard has the skills, reputation, and experience to warrant a higher-than-average billing rate.  As with the Baxter & Baxter attorneys, the Court finds the OSB Survey rates for downtown

Portland attorneys is the appropriate benchmark for Leonard. Accordingly, the same 2012 OSB Survey rates that apply to Michael Baxter, for example, also apply to Leonard.  Accordingly, the Court concludes under the circumstances of this case that Maureen Leonard's requested rate of $425 per hour is reasonable when compared to practitioners with similar experience and expertise.

## IV.  Reasonable Hours Expended

### A.   Hours Spent Preparing Opposition to Equifax's Motion for Partial Summary Judgment

Equifax objects to a total of 25.6 hours of attorney time for Justin Baxter and Michael Baxter in preparing Miller's Opposition (#17) to Equifax's Motion (#15) for Partial Summary Judgment.  Equifax contended in its Motion that it was entitled to summary judgment as a matter of law because Miller (1) could not recover damages for denial of credit, (2) could not recover damages based on lost credit opportunities, and (3) could not recover damages for loss of her good reputation.  Although the Court denied Equifax's Motion, Equifax argues the time spent by Miller's attorneys opposing Equifax's Motion should be excluded from any award for attorneys' fees because at trial Miller "reversed her position and conceded that she had no economic damages and that she would not seek economic damages at trial based on denials of credit or lost opportunities to receive credit."  Def.'s Opp'n (#119) at 10.

The Court disagrees that Equifax's Motion was limited only

11 - OPINION AND ORDER

to economic damages arising from these alleged harms.  In its
Opinion and Order (#24) issued on November 28, 2012, the Court
denied Equifax's Motion and concluded Equifax could not show as a
matter of law that Plaintiff would not be able to prove actual
damages based on the alleged harms.  Although Plaintiff did not
ultimately seek economic damages from these alleged harms, her
claims for actual damages were based on denial of credit, lost
credit opportunities, and lost reputation.  In fact, the jury was
specifically instructed that Miller's "claim for actual damages
is for emotional distress, including humiliation, mental anguish,
loss of reputation, invasion of privacy, and fear of lost credit
opportunities."  Instructions to the Jury (#81) at 11.  Miller's
successful Opposition to Equifax's Motion allowed her to present
evidence of these alleged harms at trial and likely contributed
to Miller's overall success as reflected in the amount of damages
awarded to her by the jury.

    Accordingly, the Court concludes the 25.6 hours spent by
Miller's attorneys preparing Miller's Opposition was reasonable.

    **B.  Hours Expended Related to Miller's Expert Witness**

    Equifax contends the 48.9 hours spent by Justin Baxter and
the 32.2 hours spent by Michael Baxter on activities related to
Miller's expert witness Evan Hendricks should be reduced by at
least half.  Equifax filed an extensive Motion in Limine (#36) to
exclude or to limit the testimony of Hendricks, which Miller

12 - OPINION AND ORDER

opposed.  Equifax contends a reduction in hours related to Hendricks's testimony is supported by the fact that Miller agreed during the pretrial conference to "substantially curtail Hendricks' testimony."  Def.'s Opp'n at 11.  Equifax appears to argue that Miller agreed to this because Equifax would have certainly persuaded the Court that Hendricks's "qualifications are minimal and his so-called opinions consist largely of unsupported assumptions, inflammatory characterizations, and non-expert observations."  Def.'s Opp'n at 11.  The Court is not persuaded by Equifax's argument.

The Court permitted Hendricks to testify as an expert at trial, and the record reflects Miller offered to work with Equifax to limit at least partially its objections to Hendricks's testimony in order to allow the case to proceed to trial without delay.  Equifax did not object to this approach.  Although Miller's attorneys spent a relatively significant amount of time related to Hendricks, the Court concludes the amount of time spent was reasonable, particularly in light of Miller's success at trial.

**V.    Other Factors**

Miller identifies several other factors that support the reasonableness of her request for attorneys' fees including the time and labor required, the novelty and difficulty of the questions, the skill required, preclusion of other employment,

13 - OPINION AND ORDER

the fact that Miller's counsel worked on a contingent-fee basis, the amount involved, and the results obtained.

Although the Court does not find it necessary to analyze each of these factors specifically, the Court concludes the following factors weigh in favor of the attorneys' fee award requested by Miller:  the skill of Miller's attorneys and their expertise in litigating FCRA cases, the successful results that Miller's attorneys obtained as evidenced by the amount of compensatory damages and punitive damages awarded by the jury, and the contingent-fee nature of the case.

Accordingly, the Court concludes the 747.8 hours of time spent on this matter by Miller's attorneys was reasonable.  The Court, therefore, awards attorneys' fees to Miller in the amount of **$298,740.00** as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Michael Baxter | $425 | 297.1 | $126,267.50 |
| Justin Baxter | $375 | 353.1 | $132,412.50 |
| Kachelle Baxter | $225 | 7.1 | $1,597.50 |
| Maureen Leonard | $425 | 90.5 | $38,462.50 |
| **TOTAL** | | | **$298,740.00** |

## MOTION FOR ADDITIONAL ATTORNEYS' FEES

In her Reply (#121) Miller seeks an additional $5,392.50 in attorneys' fees incurred subsequent to the filing of her initial

14 - OPINION AND ORDER

Motion for Attorneys' Fees and Bill of Costs.  As noted, the Court construes this request as a Motion for Additional Attorneys' Fees.

In his Declaration (#122) Justin Baxter sets forth the billing records that support this request.  The Court notes Miller seeks recovery of attorneys' fees for work performed by Leonard, Michael Baxter, and Justin Baxter related to (1) Equifax's appeal and Miller's cross-appeal to the Ninth Circuit, (2) post-trial settlement discussions, (3) Equifax's Motion (#91) for Reduction of Punitive Damages, and (4) Miller's Reply (#122) in Support of her Motion for Attorneys' Fees.

Miller has not provided, and the Court has not found, any authority to support an award of fees for work related to the appeal of this case to the Ninth Circuit.  The Court finds Miller's request for such fees is premature and is an issue that is more properly addressed at the appellate-court level and, accordingly, declines to award such fees.

Miller has also not provided any information about the settlement discussions for which she seeks to recover additional fees.  It is, therefore, unclear how such fees are compensable under FCRA, and the Court declines to award such fees.

As part of her request for additional attorneys' fees, Miller seeks a total of 3.0 hours for work performed by Maureen Leonard.  The Court notes the time entries of Maureen Leonard for

15 - OPINION AND ORDER

this additional work is in a block-billing format, and it is impossible, therefore, for the Court to decipher how much time Leonard spent on tasks related solely to the issues of punitive damages or attorneys' fees. As a result, even though the Court concludes work related to the punitive-damages issue and Miller's Motion for Attorneys' Fees (fees-on-fees) are properly compensable as work directly related to matters before this Court, the Court reduces the amount of fees that Miller seeks for Leonard's additional work to a total of 1.0 hours to account for the work Leonard did on the appellate issues and settlement discussions.

The Court concludes Miller is entitled additional attorneys' fees in the amount of **$3,262.50** as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Maureen Leonard | $425 | 1 | $425.00 |
| Michael Baxter: | $425 | .5 | $212.50 |
| Justin Baxter: | $375 | 7 | $2,625.00 |
| **TOTAL** | | | **$3,262.50** |

## VI.  Summary of Attorneys' Fees Awarded

As noted, the Court concludes Miller is entitled to attorneys' fees in the amounts of $298,740.00 and $3,262.50 for a total of **$302,002.50**.

## MILLER'S BILL OF COSTS

16 - OPINION AND ORDER

Miller seeks total costs in the amount of $39,719.72 as follows:

* $350.00 - Fees of the Clerk

* $30.00 - Fees for service of Summons and Subpoena

* $2,724.72 - Fees for printed or electronically recorded transcripts necessarily obtained for use in the case

* $36,615.00 - expert-witness fees under Federal Rule of Civil Procedure 37 incurred due to Equifax's refusal to admit certain matters

## I.   Standards

Absent a showing of circumstances not relevant here, an award of costs is governed by federal law.  *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003).

28 U.S.C. § 1920 allows a federal court to tax specific items such as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1).  Section 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this

17 - OPINION AND ORDER

title.

> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

As noted, costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. Fed. R. Civ. P. 54(d). The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010). *See also Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990)(citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)).

## II.   Expert-Witness Fees Under Rule 37

As noted, Miller seeks $36,615.00 in expert-witness fees under Federal Rule of Civil Procedure 37(c) due to Equifax's alleged refusal to admit in its February 2012 Response to Miller's Requests for Admissions that (1) Equifax sold inaccurate information regarding Miller in the two years preceding the filing of the Complaint; (2) Equifax did not provide all of the relevant information that it received from Miller regarding the source of the disputed information when it reinvestigated Miller's disputes in the two years preceding the filing of the Complaint; (3) Miller met the requirements of Equifax's form letter requesting Miller to provide additional identification on numerous occasions between January 2010 and September 2011, and

18 - OPINION AND ORDER

Equifax still refused to respond to Miller's statements disputing information on numerous occasions; (4) Equifax told Miller that she needed to take her dispute directly to her creditors in order to get information deleted from her Equifax credit report; and (5) Equifax did not comply with all of its procedures in handling Miller's disputes in the two years preceding the filing of her Complaint.

Miller has provided little explanation about the work that Hendricks did on this case and how it relates to Equifax's alleged failures to make the above-described admissions nor has Miller provided any testimony excerpts, declarations, underlying documentation, or any other support for her request.  Miller also provided only a cursory analysis of this issue in both her Motion (#111) and Reply (#121), which the Court finds insufficient in light of the substantial amount of expert-witness fees that Miller seeks.  Furthermore, it appears it was not clear to Equifax that Miller was seeking recovery of her expert-witness fees under Federal Rule of Civil Procedure 37 as reflected in the fact that Equifax did not address Miller's contention that Equifax failed to make certain admissions and argued only that such fees are not permissible under Federal Rule of Civil Procedure 54.

Because the parties have not provided the Court with sufficient analysis or documentation regarding this issue, the

19 - OPINION AND ORDER

Court concludes the record is not sufficiently developed. Accordingly, the Court reduces by $36,615.00 the amount of costs sought by Miller.  The Court, however, grants Miller leave to renew her request on a more developed record as a motion under Federal Rule of Civil Procedure 37.

## III. Costs other than Expert-Witness Fees

Equifax does not object to the other costs sought by Miller. The Court notes, however, that Miller has not provided any information about the transcripts for which she is seeking reimbursement or how they were used in this case.  Thus, Miller has not met her burden to show any transcripts were "necessarily obtained for use in the case" as required under § 1920.

The Court, therefore, concludes on this record that the $2,724.72 in fees for transcripts is not taxable and the non-expert witness fees that Miller seeks should be reduced by this amount.  Accordingly, the Court concludes a total of **$380.00** in costs are taxable as follows:

| Cost Item | Amount |
|---|---|
| Expert-Witness Fees | $0 |
| Fees for Transcripts | $0 |
| Fees for Service and Summons | $30.00 |
| Fees of the Clerk | $350.00 |
| **Total** | **$380.00** |

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#111) for Attorneys' Fees, **GRANTS in part** Miller's Motion (#121) for Additional Attorneys' Fees, and **AWARDS** attorneys' fees to Miller in the amount of **$302,002.50** and costs in the amount of **$380.00**.

To the extent that Miller wishes to renew her motion for expert-witness fees pursuant to Federal Rule of Civil Procedure 37 as indicated in this Order, such motion is due no later than June 6, 2014, and any response in opposition is due no later than June 20, 2014. No reply will be permitted. The Court will take the motion under advisement on June 20, 2014. If Miller does not wish to renew her motion for expert-witness fees, the Court **DIRECTS** Miller to submit a form of Judgment that conforms with this Order no later than June 6, 2014.

IT IS SO ORDERED.

DATED this 23rd day of May, 2014.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge